MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 874-4230

DANIEL E. JONES (*pro hac vice to be filed*)
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,

Plaintiffs,

v.

HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,

Defendants.

Case No. 3:25-cv-03530-EMC

Assigned to the Hon. Edward M. Chen

**DECLARATION OF VALERIE SCHUESSLER IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Date: August 28, 2025
Time: 1:30 P.M.
Location: Courtroom 5, 17th Floor

**DECLARATION OF VALERIE SCHUESSLER IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

I, Valerie Schuessler, declare as follows:

1. I either have personal knowledge of the facts and matters set forth below or I have determined that such facts and matters are true and correct on the basis of information from records kept in the ordinary course of business and/or information brought to my attention by individuals upon whom I regularly rely, including with respect to the process for using H&R Block online tax preparation and filing services and related records. If I were called as a witness in this matter, I could and would testify competently to each of the matters stated.

**My Role at H&R Block**

2. I have worked at H&R Block since May of 2014. I am currently Director, Global Consumer Tax for H&R Block online tax preparation and filing services. Prior to my current role, I also have served as a Product Manager, Senior Product Manager, and Lead Product Manager for these services. I am familiar with the process through which clients may use H&R Block online tax preparation and filing services. I am also familiar with how the H&R Block online tax preparation and filing system is structured and operates. In addition, I am familiar with how information obtained through the H&R Block online tax preparation and filing system is stored, preserved, and retrieved in the regular and ordinary course of business.

**The H&R Block Online Services Agreement**

3. Both new clients and returning clients are required to agree to the H&R Block Online Services Agreement, which includes an agreement to individually arbitrate disputes, each year they use H&R Block online tax preparation and filing services. This has been true at least since I started with H&R Block in 2014.

4. The processes that I describe below are the processes that Plaintiffs Pedro Rios, Jr. ("Rios") and Christian Marquez ("Marquez") used to log into their existing H&R Block online accounts in January 2024 and agree to the H&R Block Online Services Agreement in effect at that time. These processes have remained substantially similar throughout my employment.

5. Both Rios and Marquez first created accounts to use H&R Block online tax preparation and filing services in 2017.

**Returning Clients**

6. Rios and Marquez each was required, like all returning clients, to enter his username, email, or mobile number on the H&R Block login page in order to log into his account. Attached as **Exhibit 1** is a true and correct copy of an exemplar screenshot showing the H&R Block login page as it appeared in January 2024 (*see* page l of Exhibit 1). Entering a correct username, email, or mobile number associated with the client's account and pressing the "Continue" button displays a new screen prompting the client to enter his password or log in with a security code generated and sent to the email account or phone number designated by the client. A true and correct copy of an exemplar screenshot showing this H&R Block login page as it appeared in January 2024 is shown on the second page of Exhibit 1. The client must enter the correct password or security code in order to complete the log-in process.

7. Upon logging in, a returning client is then presented with a new screen: the "Returning Client Acknowledgment Screen." This screen states, "We've updated our terms & policies." Attached as **Exhibit 2** is a true and correct copy of an exemplar screenshot showing the Returning Client Acknowledgment Screen as it appeared in January 2024. The Returning Client Acknowledgment Screen presents the client with an acknowledgment that "I agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration," directly adjacent to a check box that the client marks (by clicking on the box) to confirm his acknowledgement of this agreement. *See* Exhibit 2.[1] The client is given the opportunity to view the complete H&R Block Online Services Agreement in effect at the time by clicking on the green, underlined words "Online

---

[1] The Online Services Agreement has included an arbitration agreement for the entire time I have worked at H&R Block. The existence of the arbitration agreement has always been called out on the online page where the client affirms their acknowledgement of the Online Services Agreement in substantially the same way it was in January 2024, as described here and shown in Exhibit 2.

Services Agreement" in the text immediately next to the check box, which contain an embedded link that takes the client to a webpage containing the complete document. *See id.*[2]

8. Once the returning client views the Returning Client Acknowledgment Screen, the returning client then must: (i) click the check box to agree to the H&R Block Online Services Agreement; and (ii) click "Next" to move past the Returning Client Acknowledgment Screen and access H&R Block online tax preparation and filing services. If the client tries to click the "Next" button to move past the Returning Client Acknowledgment Screen without clicking the check box or by later deselecting the check box (by clicking on it a second time), he cannot proceed, and an error message is displayed. Attached as **Exhibit 3** is a true and correct copy of an exemplar screenshot showing the error message as it appeared in January 2024, which reads in red font: "In order to continue, you must agree to the above terms and conditions." The "Next" button will only operate to advance to the next screen if the check box is clicked to acknowledge the client's agreement to the Online Services Agreement. In other words, no client is able to proceed past the Returning Client Acknowledgment Screen without agreeing to the then-current H&R Block Online Services Agreement.

**Acceptance of the H&R Block Online Services Agreement**

9. When a client accepts the H&R Block Online Services Agreement under the processes described above, the date and time of acceptance are automatically stored in H&R Block's records.

10. According to H&R Block records, Rios accepted the H&R Block Online Services Agreement under the processes described above on January 5, 2024, at 11:24 P.M. central time. According to H&R Block records, Marquez accepted the H&R Block Online Services Agreement under the processes described above on January 26, 2024 at 4:22 P.M. central time. Attached as

[2] The green, underlined terms "Electronic Communications Consent" and "Privacy Notice" shown in Exhibit 2 are also links. If clicked, each link takes the client to a webpage containing the respectively-named, complete document.

**Exhibit 4** is a true and correct copy of the operative H&R Block Online Services Agreement agreed to by Rios and Marquez at those dates and times.[3]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10_day of July, 2025.

Valerie Schuessler

[3] H&R Block records further confirm that Plaintiffs accepted the Online Services Agreement in every year that they had used H&R Block online tax preparation and filing services in the past, as well as when they recently accessed their accounts in 2025. The arbitration provisions in those agreements, like the provisions they agreed to in January 2024, require them to individually arbitrate all disputes and claims with any of the H&R Block Parties, including H&R Block, Inc., HRB Tax Group, Inc., and their parents, subsidiaries, and affiliates.