# EXHIBIT 11

ZIMMERMAN | REED

November 21, 2024

**Via First Class Mail and Email to HRB_Legal@hrblock.com**

Shruti K. Tejwani
Corporate Counsel
H&R Block-Legal Department
One H&R Block Way
Kansas City, MO 64105
HRB_Legal@hrblock.com

**Re:    Your November 7, 2024 Letter Responding to Our Clients' Pre-Filing Notice of Dispute
of September 20, 2024 and October 23, 2024 letter.**

Ms. Tejwani,

We are in receipt of your letter dated November 7, 2024 and respond to the points made below.

**A.    2,481 Individual Pre-Filing Notices of Dispute Were Provided to H&R Block in
September.**

As an initial matter, we disagree that our letter dated September 20, 2024 that was sent on behalf
of our 2,481 individual clients is in any way an improper or ineffective means to provide H&R
Block the 2,481 clients' individual Pre-Filing Notices of Dispute, as you assert.  There is no
material difference as to whether the Notices of Disputes were provided via 2,481 individually
mailed letters or more efficiently via a single letter, sent to H&R Block by certified mail, providing
a ShareFile link that provided access to the exact same documents for your review.  What is
material is that H&R Block actually received the 2,481 clients' individual Pre-Filing Notices of
Dispute (and Consent to Disclose Tax Information to Attorneys forms), which it clearly did.  The
certified mail receipt confirms delivery of the September 20, 2024 letter to H&R Block in Kansas
City, Missouri on September 27, 2024 (signed by J. Graham for H&R Block).  Whether H&R Block
elected to read the Notices of Dispute provided to it that day or not, was its choice.

Any refusal by H&R Block to review and consider the 2,481 individual Pre-Filing Notices of
Dispute already provided in September, appears to be in bad faith and done for purposes of
trying to obstruct the advancement of the claims in the designated arbitration forum and to cause
needless delay and prejudice.  Your refusal to consider the 2,481 individual Notices of Dispute,
however, does not mean they were not provided to H&R Block and it is not on notice of them or
is unable to review them.  The use of electronic means to exchange documents has long been the
equivalent of that sent via U.S. mail, as confirmed by the fact courts now use ECF filings as does
the American Arbitration Association (AAA), the arbitration forum H&R Block chose to
designate in its terms.[1]  In fact, H&R Block's entire business model is based on the exchange and

---

[1]  *See e.g.*, AAA Rules MA-2-3 ("MA-3. Serving of Documents, Notices, and Communications (a)
For all purposes in accordance with these Supplementary Rules, the parties shall accept
documents, notices, and communications pertaining to each Mass Arbitration via single,
combined, electronic communication from the AAA-ICDR. The AAA-ICDR will determine when

November 21, 2024
Page 2

filing of formal tax documents primarily through electronic means, opposed to exclusively through U.S. mail. Your letters of October 17 and November 7 further confirm that H&R Block already possesses or has immediate access to all 2,481 individual Pre-Filing Notices of Dispute. We treat any such condition as being satisfied and will proceed accordingly.

To this effect, while you attempt to argue that we have not provided "proper or effective notice of any claimant's dispute with H&R Block", you fail to identify any required information that was not provided to H&R Block in the 2,481 individual Pre-Filing Notices of Dispute provided on September 27. And to again clarify, each of the 2,481 Claimants that provided a separate and individual Pre-Filing Notice of Dispute via the ShareFile link published in our prior letter only seeks individual dispute resolution in AAA not any class, joint or consolidated arbitration process. If H&R Block, however, continues to refuse to arbitrate their claims, each of our 2,481 clients reserve any and all rights they may have under applicable laws. *See e.g.*, Cal Civil Code §1281.97-.99.

To the extent H&R Block wishes to discuss resolution any of the 2,481 individual claims for which a Prefiling Notice of Dispute has been provided, please let us know as we are prepared to do so. Likewise, to the extent you wish to present any reasonable individual settlement offers to our clients to resolve their claims at this stage, feel free to do so. We will promptly respond to any reasonable settlement offers made to our clients.

**B.    Each of the 2,481 Clients Provided H&R Block Their Individual Consent to Disclose Tax Information to Attorneys in Writing.**

Next, you improperly take issue with the form of the Individual Consents to Disclose Tax Information to Attorneys signed by each of the 2,481 claimants. Your position is misplaced for several reasons.

First, there is nothing defective about any of the 2,481 consent documents already provided to H&R Block on September 27, 2024. As you are aware, each is signed by the individual client and expressly provides in writing that authorization is given to H&R Block to discuss their claims with counsel at Zimmerman Reed, LLP. Each clearly provides that the individual client authorizes H&R Block and any of its affiliates to disclose to Zimmerman Reed LLP all of their tax return information, including data that they provided to H&R Block for tax preparation for the relevant years/ time period referenced. The sample consent form you attach to your October 17 and November 7 letters provides nothing different.[2] Any comments challenging this simply represents an attempt to elevate form over substance in bad faith.

---

separate documents, notices, and communications are required. (b) Service of documents, notices, and communications pertaining to Mass Arbitrations will be effected via electronic means, such as a file transfer protocol administered by the AAA-ICDR or AAA WebFile® platform. Parties providing service of documents, notices, and communications must simultaneously notify opposing parties in writing that the documents, notices, or communications have been submitted.") and R-2 ("The Claimant may file my mail. … Or, the claimant may file online using AAA WebFile: https://www.adr.org").

[2]  Given H&R Block's position that a signed statement is required by law to authorize the H&R Block Parties to disclose the individuals' confidential tax and account records to third parties,

November 21, 2024
Page 3

Second, with respect to any informal settlement conference that may occur, H&R Block's Online Service Agreement (OSA) only provides: "Any counsel representing you or us may also participate; however, if you have retained counsel, a signed statement is required by law to authorize the H&R Block Parties to disclose your confidential tax and account records to your counsel." The OSA does not indicate that this must done only via the specific form you now attach to your letter and try to impose as a new requirement. Rather, the OSA only requires a "signed statement" not that it be submitted on any particular form or manner. The specific form you now provide was not made part of the OSA or otherwise referenced. The Individual Consents to Disclose Tax Information to Attorneys signed by each of the 2,481 claimants and provided to H&R Block on September 27 each comply with the actual language in the OSA, as they each constitute signed statements authorizing the H&R Block Parties to disclose the individual's confidential tax and account records to their designated counsel, as the following language from each of the 2,481 clients' submitted Consents to Disclose confirms:

> The purpose of this letter is to authorize HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") and any of their affiliates, as well as Meta Platforms Inc. ("Meta") and Google LLC ("Google) and their affiliates, to disclose my tax return information for 2021 and 2022 to my attorneys at Zimmerman Reed LLP to assist them in pursuing my claims against H&R Block, Google, and Meta, for the unauthorized interception and disclosure of my personal and tax information.

> I authorize H&R Block, Meta, Google and any of their affiliates to disclose to Zimmerman Reed all tax return information, including, but not limited to, data I provided to H&R Block for tax preparation, for the relevant year(s) that Zimmerman Reed deems is necessary to pursue my claims. This would include, but is not limited to, disclosure of any information describing or related to the data tracking and sharing activities that H&R Block engaged in with Meta, Google and/or any other third-party as described in whole or part in the U.S. Senate Report, Attacks on Tax Privacy, How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023.

Nothing more was required and the terms of the OSA cannot be modified after the fact at this time by H&R Block to create new and different barriers, "requirements" and delays, as H&R Block now attempts to do.

Third, use of the sample consent form you attach to your October 17 and November 7 letters is not a pre-requisite for providing the Pre-Filing Notice and commencing arbitration proceedings in AAA. Nor is submission of any consent form a requirement for any informal settlement conference. To the extent any confidential tax data needs be addressed that will occur at the later merits stage after the appointment of a merits arbitrator by AAA and Rule 22 procedures.

There is no requirement that any prefiling informal settlement conference address, involve disclosure of or discussion of any clients' "confidential tax and account records." In this regard,

---

however, we do again ask H&R Block to provide us copies of any such signed statements authorizing H&R Block to disclose any of the 2,481 individuals' tax and account information to third-parties including Meta and Google.

November 21, 2024
Page 4

we do not anticipate any need to discuss the details of any of the 2,481 Claimants' tax and account records in any informal settlement conferences with our clients under section 11.2 of the OSA to the extent they occur.  Any paragraph 11.2 conference would address settlement terms, should H&R Block wish to present a settlement offer to our clients in a specific amount, not any client specific discovery or tax account records.[3]  Discovery proceedings come later under AAA Rule R-22, after the claim is filed in AAA and a merits arbitrator is appointed.  *See* R-22(c ) ("No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.").  H&R Block cannot attempt to condition an arbitration filing in AAA through a procedure that attempts to reverse the order of AAA procedures and require discovery (or the discussion of information to potentially be disclosed in discovery) first .

The scope of any informal settlement conference (if any) before the filing of claims in AAA only need address and be limited to settlement terms that may be offered by H&R Block to resolve legal claims.  AAA Rules call for more detailed settlement discussions at a later stage, after Rule 22 exchanges and other permitted discovery, should the parties be willing to engage in such proceedings.  *See e.g.*, AAA Rules MA-9 and R-10 ("At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.").

To the extent any confidential materials need be exchanged with regard to a claim, that is also a matter for the assigned merits arbitrator to oversee at a later stage of proceedings. *See*, AAA Rule R-23 ("The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to: (a) an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality").

Fourth, to the extent discovery is undertaken, the ability to request and receive information from the other party must be mutual.  H&R Block cannot attempt to dictate that only it receive information from adverse parties at any stage.

---

[3]  Pursuant to California Rule of Professional Conduct 4.2(a) and other applicable rules, it appears improper for H&R Block's counsel, directly or indirectly, to communicate with any Claimant about the subject of their representation. We as counsel are, of course, willing to personally participate in any informal dispute conference with H&R Block's counsel and will promptly confer with our individual clients regarding any settlement offer made and respond in due course.  As indicated before, our individual clients are willing to attend any settlement conference to the extent necessary but are entitled to confer privately with their counsel regarding any offers.

November 21, 2024
Page 5

**C.      H&R Block Is Not Engaging in Any Good Faith Effort to Settle any of the 2,481 Claimants' Disputes Without the Need to Proceed With Arbitration.**

The OSA requires both parties to "participate in a *good-faith effort* to settle the dispute without the need to proceed with arbitration" after provision of a Notice of Claim.  By refusing to consider the 2,481 individual Prefiling Notices of Disputes that it plainly has possession of, and by attempting to create other needless barriers and delays for our clients, H&R Block is plainly refusing to "participate in a good-faith effort to settle the dispute without the need to proceed to arbitration" and in breach of its own agreement.

We understand H&R Block's position, as stated in the final two paragraphs of your November 7 letter, to be that due to the foregoing disputes it still does not agree to the immediate filing of any of the 2,481 claims in arbitration.  We plan to proceed accordingly as we believe all enforceable conditions precedent have been met; other conditions that H&R Block is attempting impose are unconscionable, unlawful and/or unenforceable; and our clients are being prejudiced by the improper delays and barriers to actual dispute resolution in any forum (including the ability to secure necessary injunctive relief) that H&R Block is attempting to impose.  Among other things, H&R Blocks' refusal to consider the Notices of Claim already provided and the tolling of limitations periods during the pre-filing notice period is prejudicial.  Further, AAA rules and policies require that ADR proceedings actually occur within a reasonable time, without undue delay.  *See,* AAA Consumer Due Process Protocol Statement of Principals No.  8 ("ADR proceedings should occur within a reasonable time, without undue delay. The rules governing ADR should establish specific reasonable time periods for each step in the ADR process and, where necessary, set forth default procedures in the event a party fails to participate in the process after reasonable notice.").  See also, H&R Block's ongoing obstruction prevents that and we therefore reserve all rights to seek appropriate relief in any forum.

**D.      Provisions of H&R Blocks' OSA are Unconscionable and Unenforceable.**

As a final matter, while we have indicated that we are willing present our 2,481 clients' claims for prompt dispute resolution in individual, bilateral arbitrations at AAA, it is apparent that H&R Block seeks to prevent this through its stated positions on the rejection of the prefiling notices of claim provided; prefiling informal settlement conferences; mandated delays to arbitration filings; delays and interferences based on the identity of a claimant's chosen legal counsel; and delays through batched arbitration procedures or "staged bellwether proceedings".  Many of these tactics are aimed at chilling claims by creating needless barriers, prejudices and delays that hinder our clients' abilities to seek prompt resolution of legal disputes though bilateral arbitrations with the assistance of their chosen legal counsel. *See e.g., Heckman v. Ticketmaster,* - F.4th - , 2024 WL 4586971, *13-14, 15-16 (9th Cir., Oct. 28, 2024), citing *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) and *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022). It is improper to seek to interfere with attorney-client relationships by seeking to impose additional burdens on clients' claims based on the identity of their selected counsel. The prejudices are further amplified when clients' tax information remains in the possession of third-parties but barriers imposed hinder their ability to seek immediate relief.  As a result, Claimants reserve all rights they may have in this regard.

November 21, 2024
Page 6

We remain available to discuss the matters addressed above.

Sincerely,

Caleb L. Marker
caleb.marker@zimmreed.com

cc:     Hart L. Robinovitch
        Ryan Ellersick
        Hannah Brown