1

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)

2

*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500

3

San Francisco, CA 94105
Telephone:    (415) 874-4230

4

5

DANIEL E. JONES (*pro hac vice to be filed*)
*djones@mayerbrown.com*

6

1999 K Street, N.W.
Washington, DC 20006-1101

7

Telephone: (202) 263-3000

8

*Attorneys for Defendants HRB Digital, LLC and HRB*

9

*Tax Group, Inc.*

10

11

**UNITED STATES DISTRICT COURT**

12

**NORTHERN DISTRICT OF CALIFORNIA**

13

**SAN FRANCISCO DIVISION**

14

PEDRO RIOS, JR., and CHRISTIAN
MARQUEZ, individually, and on behalf of

15

those similarly situated,

16

Plaintiffs,

17

v.

18

HRB DIGITAL, LLC, a Delaware Corporation,
HRB TAX GROUP, INC., a Missouri

19

Corporation,

20

Defendants.

21

Case No. 3:25-cv-03530-EMC

Assigned to the Hon. Edward M. Chen

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO COMPEL
ARBITRATION AND STAY
LITIGATION**

Date:        August 28, 2025
Time:        1:30 P.M.
Location:    Courtroom 5, 17th Floor

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

ARGUMENT .................................................................................................................................. 2

I.     The FAA Applies To Plaintiffs' Arbitration Agreements. .................................................. 2

II.    Plaintiffs' Arbitration Agreements Are Not Unconscionable. ............................................ 3

     A.     The Arbitration Agreement Is Not Procedurally Unconscionable. ......................... 3

     B.     The Arbitration Agreement Is Not Substantively Unconscionable........................ 7

          1.     The pre-arbitration dispute resolution process is enforceable.................... 7

          2.     The bellwether procedures are enforceable................................................. 9

               a.     H&R Block's arbitration agreement tolls the statute of limitations............................................................................... 10

               b.     The bellwether provision does not result in unconscionable delay. ................................................................. 11

               c.     The bellwether procedures are appropriately limited to claims brought by the same or coordinated counsel. .................... 13

          3.     The challenged terms are severable. ......................................................... 14

III.    Plaintiffs Cannot Evade Arbitration By Invoking *McGill*. ................................................. 15

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ....................................................................................................3, 14

*Baltazar v. Forever 21, Inc.*,
   367 P.3d 6 (Cal. 2016) ...........................................................................................................6

*Brooks v. WarnerMedia Direct, LLC*,
   2024 WL 3330305 (S.D.N.Y. July 8, 2024) ........................................................................15

*Caimano v. H&R Block*,
   2024 WL 3295589 (E.D. Pa. July 3, 2024) ..........................................................1, 3, 5, 10

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) ...............................................................................................3

*Cordero v. Coinbase, Inc.*,
   2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) .....................................................................1, 2

*Dornaus v. Best Buy Co.*,
   2019 WL 632957 (N.D. Cal. Feb. 14, 2019) ........................................................................15

*Estate of Elkins v. Palayo*,
   2020 WL 977931 (E.D. Cal. Feb. 28, 2020) ......................................................................7, 8

*Fish v. Tesla, Inc.*,
   2022 WL 1552137 (C.D. Cal. May 12, 2022) ....................................................................5, 6

*Flores v. Am. Seafoods Co.*,
   335 F.3d 904 (9th Cir. 2003) .................................................................................................4

*Gentry v. Superior Court*,
   42 Cal. 4th 443 (2007) ...........................................................................................................3

*Heckman v. Live Nation Entertainment, Inc.*,
   120 F.4th 670 (9th Cir. 2024) .....................................................................................1, 2, 14

*In re HIV Antitrust Litig.*,
   2023 WL 7397567 (N.D. Cal. Nov. 8, 2023) ......................................................................14

*Hodges v. Comcast Cable Commc'ns, LLC*,
   21 F.4th 535 (9th Cir. 2021) ...............................................................................................15

*Hohenshelt v. Super. Ct.*,
   --- P.3d ----, 2025 WL 2302229 (Cal. Aug. 11, 2025) ......................................................11

*HTC Corp. v. Tech. Props. Ltd.*,
   715 F. Supp. 2d 968 (N.D. Cal. 2010) ..................................................................................8

ii

*Hunt v. Meta Platforms, Inc.*,
    729 F. Supp. 3d 964 (N.D. Cal. 2024) ...............................................................................1, 3, 4

*Jones v. Starz Ent., LLC*,
    129 F.4th 1176 (9th Cir. 2025) ...............................................................................................1, 2

*In re Kunstler*,
    914 F.2d 505 (4th Cir. 1990) ........................................................................................................9

*Lag Shot LLC v. Facebook, Inc.*,
    545 F. Supp. 3d 770 (N.D. Cal. 2021) .....................................................................................15

*Little v. Auto Stiegler, Inc.*,
    29 Cal. 4th 1064 (2003) .............................................................................................................15

*McFarland v. Almond Bd. of Cal.*,
    2013 WL 1786418 (E.D. Cal. Apr. 25, 2013) ............................................................................6

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .........................................................................................1, 3, 4, 5

*Nguyen v. Applied Med. Resources Corp.*,
    4 Cal.App.5th 232 (2016) .............................................................................................................7

*Pabon v. HRB Digital LLC*,
    2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025) ....................................................................1, 3, 5

*Pandolfi v. AviaGames, Inc.*,
    2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ...........................................................................14

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ...................................................................................................14

*Ruiz v. CarMax Auto Superstores, Inc.*,
    2024 WL 1136332 (C.D. Cal. Jan. 18, 2024) ...........................................................................15

*Sanchez v. Valencia Holding Co.*,
    353 P.3d 741 (Cal. 2015) .....................................................................................................5, 14

*Serpa v. Cal. Surety Investigations, Inc.*,
    215 Cal.App.4th 695 (2013) .........................................................................................................7

*Singh v. Uber Techs., Inc.*,
    67 F.4th 550 (3d Cir. 2023) ..........................................................................................................4

*Ulbrich v. Overstock.Com, Inc.*,
    887 F. Supp. 2d 924 (N.D. Cal. 2012) .......................................................................................6

*Zuckerman v. Charter Commc'ns, LLC*,
    2024 WL 4871739 (S.D. Cal. Nov. 22, 2024) ...........................................................................3

**Statutes**

28 U.S.C. § 1927 ..............................................................................................................................9

**Other Authorities**

ABA Model Rule 3.1 ....................................................................................................9

American Arbitration Association, Mass Arbitration Supplementary Rules,
    Rule MA-1(b)(iii) ..............................................................................................14

Cal. Rule of Professional Conduct 4.2 ......................................................................7, 8

IRS Revenue Procedure 2013-14, section 2 ................................................................6

IRS Revenue Procedure 2013-14, section 5.04 ...........................................................6

Plaintiffs' attacks on their arbitration agreements are heavy on rhetoric but slender on the law. They attempt to avoid the Federal Arbitration Act by relying heavily on *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), but they ignore that H&R Block's arbitration process shares none of the unusual features of the New Era procedures that were central to *Heckman*. *See Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1182-83 (9th Cir. 2025). Notably, Judge Breyer recently applied *Jones* in rejecting the same type of argument that plaintiffs raise here. *See Cordero v. Coinbase, Inc.*, 2025 WL 2223495, at *4-5 (N.D. Cal. Aug. 5, 2025).

Plaintiffs' unconscionability challenges fare no better. Plaintiffs cannot show procedural unconscionability because they had the right to opt out of arbitration. Binding Ninth Circuit precedent is dispositive on this point. *See Mohamed v. Uber Techs.*, *Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Plaintiffs' answer to *Mohamed* is essentially to urge the Court to disregard it. But the Court should reject that improper invitation, which would also conflict with decisions of other federal courts upholding materially identical versions of the H&R Block Online Services Agreement (OSA). *See Hunt v. Meta Platforms, Inc.*, 729 F. Supp. 3d 964, 967 (N.D. Cal. 2024) (applying *Mohamed*); *Caimano v. H&R Block*, 2024 WL 3295589, at *12-13 (E.D. Pa. July 3, 2024). As a federal court in New York recently put it, H&R Block customers have "'reasonably conspicuous notice'" of the OSA's arbitration provision, and that provision is not procedurally unconscionable because there was a "'meaningful opportunity to opt out.'" *Pabon v. HRB Digital LLC*, 2025 WL 2254008, at *2, *4 (E.D.N.Y. Aug. 7, 2025) (applying New York law).

That should end the analysis, but if the Court nonetheless reaches substantive unconscionability, plaintiffs' arguments on that score fail too. The OSA's pre-arbitration dispute resolution procedures and bellwether procedures are valid and enforceable, and plaintiffs' characterizations of H&R Block's arbitration process as "unworkable" and a "sham" (Opp. 2) are both wrong on the law and rest on an inaccurate and misleading presentation of the facts. The Court should reject plaintiffs' position, which ignores the realities of mass arbitrations and the meaningful risk that they will be abused—a risk that has been realized in this case, as discussed further below.

**ARGUMENT**

### I.    The FAA Applies To Plaintiffs' Arbitration Agreements.

Plaintiffs overread *Heckman* in asserting that the FAA does not apply. Opp. 8-13. The *Heckman* court held that **New Era's particular form** of "aggregative arbitration" is "not arbitration as envisioned by the FAA," because it is not "bilateral" and "individualized." 104 F.4th at 689-90. Specifically, under the New Era procedures, all "common issues" are "treated in a 'class or representative' fashion" by being decided in bellwether rulings that are "*binding* on non-bellwether plaintiffs, who had no chance to participate in the arbitration and who are ignorant of the decision until it is invoked against them." *Id.* at 679, 683 (emphasis added).

There is no comparable "use of aggregation in arbitration" here. *Id.* at 689-90. The plain language of the OSA requires each arbitration to be "resolved individually" and expressly *prohibits* any preclusive effect on other claimants. Mem. 17 & n.6; Schuessler Decl. Ex. 4 §§ 11.6, 11.7. Plaintiffs' complaints about staged bellwethers are misguided, as discussed below, but in all events the bellwether process does not transform individual arbitrations into a "class or representative" arbitration. The Ninth Circuit recently explained this "critical difference": "In a class or representative arbitration, an individual brings claims *on behalf of* others, whereas a claimant in a consolidated arbitration brings the claim in her *individual* capacity." *Jones*, 129 F.4th at 1182-83.

Here, too, under the OSA each claimant brings an arbitration "in her individual capacity"; plaintiffs' attempt to limit *Jones* to the consolidation procedures in that case (Opp. 12-13) ignores this broader holding and *Jones*'s limitation of *Heckman* to its unusual facts. Indeed, Judge Breyer recently relied on *Jones* in rejecting a similar argument, explaining that *Heckman* must be given a "narrow reading" and doesn't apply when there "are no bellwether or representative proceedings that *bind absent parties*." *Cordero*, 2025 WL 2223495, at *5 (emphasis added). Put simply, the OSA and incorporated AAA rules implicate "none of th[e] concerns" animating *Heckman*: "no claimant is at the mercy of another claimant's representation of her." *Jones*, 129 F.4th at 1182.[1]

What plaintiffs really are saying is that any time their counsel amasses enough claimants,

---

[1]    Plaintiffs' assertion that claimants "must engage in common settlement procedures based on the bellwether results" (Opp. 9) is false. The results of bellwether proceedings *encourage* and *inform* merits-based settlements; they don't *require* settlements. Mem. 18-19.

"the logistical realities of adjudicating tens of thousands of individual disputes" should destroy the parties' agreement to individual arbitration and instead open the door to class actions in court. Opp. 13. But that view was resoundingly rejected by the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), and its progeny, including *Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012).

## II.    Plaintiffs' Arbitration Agreements Are Not Unconscionable.

Plaintiffs can't show either procedural or substantive unconscionability—much less *both*.

### A.    The Arbitration Agreement Is Not Procedurally Unconscionable.

Plaintiffs have no real answer to *Mohamed*—binding circuit precedent—which makes clear that plaintiffs' undisputed right to opt out of the arbitration agreement in the OSA (or revisions to that agreement) defeats their assertions of procedural unconscionability. Mem. 10-12. The Court should reject plaintiffs' invitation to disregard *Mohamed* and create a conflict with the decisions by three federal courts, including Judge Pitts, holding that materially identical versions of the OSA are not procedurally unconscionable because of the "clear opt-out provision." *Hunt*, 729 F. Supp. 3d at 970; *see also Pabon*, 2025 WL 2254008, at *4; *Caimano*, 2024 WL 3295589, at *12-13.

Plaintiffs urge the Court to ignore *Mohamed* and instead focus on *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007), and cases applying *Gentry*. Opp. 16. But in *Mohamed* itself, the Ninth Circuit held that this Court erred in relying on *Gentry* because that decision did not undermine circuit precedent: "The district court does not have the authority to ignore circuit court precedent, and neither do we." *Mohamed*, 848 F.3d at 1211. One of plaintiffs' cases underscores their error: it relied on this Court's decision in *Mohamed* but ignored the Ninth Circuit's reversal. *See Zuckerman v. Charter Commc'ns, LLC*, 2024 WL 4871739, at *9 (S.D. Cal. Nov. 22, 2024).

*Gentry* is also distinguishable; there, the court believed that a prospective *employee* would face "pressure not to opt out of" arbitration based on the "economic power" employers wield over job-seekers. 42 Cal. 4th at 472. Consumers have many options for tax filing services and face no comparable pressure. Plaintiffs make the unsupported assertion that "the opt-out was presented in the context of pressure to comply with tax deadlines" (Opp. 17), but that's impossible to square with reality. Both Rios and Marquez logged into their online accounts and agreed to the operative

OSA in *January* 2024, months before any tax filing deadline. Schuessler Decl. ¶ 10. More fundamentally, the tax filing deadline is irrelevant because customers always have 30 days to review and decide whether to opt out of the arbitration provision; in other words, a customer is free to obtain the benefits of the OSA and use H&R Block's online tax filing services to meet any filing deadline while later opting out of the OSA's arbitration agreement within the 30-day period.

Plaintiffs next try a different angle, arguing that the opt-out is "fundamentally illusory" because to avoid arbitration altogether they would need to opt out each time they agreed to a new version of the OSA (Opp. 17), which includes updated versions of arbitration agreements over time. But this argument is hypothetical; plaintiffs had the opportunity to opt out of each of their arbitration agreements by filling out an online form or mailing a letter, and they have *never* availed themselves of that opportunity. Crew Decl. ¶ 5 & n.1; Mem. 3-4. The OSA requires H&R Block to honor timely opt outs—and plaintiffs don't contend otherwise. That undermines their assertion of illusoriness: "[a]n illusory promise is one containing words 'in promissory form that promise nothing' and which 'do not purport to put any limitation on the freedom of the alleged promisor.'" *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 912 (9th Cir. 2003) (quoting 2 Corbin on Contracts 142 (rev. ed. 1995)); *accord Mohamed*, 848 F.3d at 1211 (quoting same).

Applying these principles, the Third Circuit has rejected the precise argument plaintiffs make here. Because "[p]laintiffs had a meaningful right to opt out of every agreement that they were presented with," the opt-out provision is not illusory, and this is true even though the "requirement that they opt out of each new agreement is 'more burdensome' than a permanent opt-out right." *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 564-65 (3d Cir. 2023) (quoting *Mohamed*, 848 F.3d at 1211). It is unsurprising, then, that *Hunt*, *Caimano*, and *Pabon* all have upheld the enforceability of materially identical versions of the OSA containing the same opt-out process.

Plaintiffs also are wrong in asserting that there is "no explicit or guaranteed process to opt out of" the bellwether procedures (Opp. 9); H&R Block customers can opt out of the entire arbitration clause, including the bellwether provision. In addition, had plaintiffs opted out of arbitration beginning in "2021 and 2022" and instead agreed to arbitrate under the 2020 version of the OSA, as they hypothesize (Opp. 17), then they would not have been subject to the bellwether

4

1    provision at all, as it was first introduced in 2021. Supp. Decl. of Daniel Murdock ¶ 17.

2         Next, plaintiffs' assertions of undue "surprise" (Opp. 17-18) cannot be squared with the

3    OSA or the law. The arbitration provision—including the opt-out provision and bellwether

4    procedures—is conspicuously presented under clear headings, with the opt-out in a separate bolded

5    box, and consumers are expressly informed of the arbitration clause when they accept the OSA.

6    *See* Mem. 3-4, 10-11; *see also*, *e.g.*, *Fish v. Tesla, Inc.*, 2022 WL 1552137, at *6 (C.D. Cal. May

7    12, 2022) (noting that "it would have been nearly impossible for [plaintiffs] to miss the arbitration

8    provisions, which Defendant offset from all other provisions with a conspicuous black box").

9         As the Ninth Circuit put it in *Mohamed*, "one who signs a contract is bound by its provisions

10   and cannot complain of unfamiliarity with the language of the instrument"—particularly given the

11   thirty days to review the contract and decide whether to opt out of arbitration. 848 F.3d at 1211

12   (quotation marks omitted). That was true even when—*unlike here*—"the opt-out provision was

13   'buried in the agreement.'" *Id.* (quoting the district court). And courts have repeatedly rejected the

14   argument that consumers lack reasonable notice of the OSA and its arbitration clause. *Pabon*, 2025

15   WL 2254008, at *2; *Caimano*, 2024 WL 3295589, at *12. This case is nothing like in *OTO, LLC*

16   *v. Kho* (cited at Opp. 17), where the agreement used "extremely small font" that made the text

17   "visually impenetrable" and "challenge[d] the limits of legibility." 447 P.3d 680, 691 (Cal. 2019).

18        Plaintiffs also say that defendants were required to give heightened notice of the bellwether

19   procedures. Opp. 17-18. But the procedures are clearly disclosed under the heading "**Arbitration**

20   **of similar claims**." Schuessler Decl. Ex. 4 § 11.6. And plaintiffs have no answer to *Caimano*'s

21   rejection of a similar argument because customers had "reasonable notice of this provision" and of

22   the arbitration clause. 2024 WL 3295589, at *12. There is "little logic behind relieving a plaintiff

23   of his or her duty to read a contract simply because a hyperlink to the contract does not list each

24   and every material provision of the contract." *Fish*, 2022 WL 1552137, at *6.

25        Plaintiffs' position also runs headlong into the FAA. A rule requiring greater disclosure of

26   an arbitration clause—much less any specific term within that clause—is squarely preempted.

27   Mem. 11 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The California

28   Supreme Court agrees: a business need not "highlight the arbitration clause" or "specifically call

5

1    that clause to [the consumer's] attention," because "[a]ny state law imposing such an obligation

2    would be preempted by the FAA." *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 751 (Cal. 2015).

3        Plaintiffs further protest that their counsel were surprised that H&R Block would not accept

4    the statements counsel prepared purporting to authorize the disclosure of taxpayer information.

5    Opp. 17-18. That provision applies only when a claimant has "retained counsel" (Schuessler Decl.

6    Ex. 4 § 11.2(B)), so no claimant needs to figure out the requirements for such a statement on their

7    own. Moreover, as H&R Block explained (*see* Ellersick Decl. Ex. 12), their quarrel is with the ***IRS***,

8    which dictates both the words and the order of the statements needed to authorize disclosure.[2]

9    Compliance with IRS requirements matters; because the forms Zimmerman Reed submitted (*see*

10   Ellersick Decl. Ex. 5) did not use the "mandatory language" in the "sequence" required by the IRS,

11   they were not "materially identical" (Opp. 6) to the IRS-standard form used by H&R Block and

12   other tax preparers, and therefore did not comply with IRS mandates. Gilman Decl. ¶¶ 11-13.

13       Plaintiffs next suggest that H&R Block had to attach the standard form to the OSA, pointing

14   to a line of California cases holding that a failure to attach arbitration rules can contribute to

15   procedural unconscionability. Opp. 18 (citing *Trivedi v. Curexo Tech. Corp.*, 189 Cal.App.4th 387,

16   393 (2010)). But they ignore that the California Supreme Court has limited those cases to situations

17   where the rules had an element of "*substantive* unconscionability." *Baltazar v. Forever 21, Inc.*,

18   367 P.3d 6, 12-13 (Cal. 2016) (emphasis added); *accord Fish*, 2022 WL 1552137, at *6. There is

19   nothing substantively unconscionable about requiring compliance with IRS-mandated procedures.

20   And in all events, even if IRS-mandated procedures could somehow be likened to arbitration rules,

21   courts have held that any state-law rule requiring a contract to attach arbitration rules is preempted

22   by the FAA. *See*, *e.g.*, *McFarland v. Almond Bd. of Cal.*, 2013 WL 1786418, at *5 (E.D. Cal. Apr.

23   25, 2013); *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012).[3]

24   [2]    Internal Revenue Procedure 2013-14, section 5.04 ("The following statements *must be*
         *included* in a consent under the circumstances described below"; "any consent to disclose tax return
25       information must contain *the following statements in the following sequence*") (emphases added);
         *id.* section 2 (referring to "*mandatory* language *required* on each taxpayer consent to disclose or
26       consent to use tax return information") (emphases added); Declaration of Stacey Gilman ¶ 12.

27   [3]    Plaintiffs also assert surprise (Opp. 18) from the statement that arbitrators "are encouraged
         to resolve the cases within 120 days of appointment or as swiftly as possible" (Schuessler Decl. Ex.
28       4 § 11.6). But that statement obviously doesn't promise that the arbitration *will* be resolved by a

6

1

**B.      The Arbitration Agreement Is Not Substantively Unconscionable.**

2

Because plaintiffs cannot show procedural unconscionability, the Court's analysis can and

3

should end there. *See* Mem. 11-12. But plaintiffs' substantive unconscionability arguments fail as

4

well. Plaintiffs challenge two provisions as substantively unconscionable: the pre-arbitration

5

dispute-resolution process and the bellwether procedures. They have not met their burden of

6

showing that either provision is substantively unconscionable. *See id.* at 9, 12-20.

7

**1.      The pre-arbitration dispute resolution process is enforceable.**

8

As defendants' motion explained, the Supreme Court, Ninth and Fourth Circuits, and

9

California Court of Appeal have all recognized why parties benefit from a cost-free opportunity to

10

resolve disputes informally prior to arbitration.[4] Courts also routinely enforce agreements requiring

11

pre-arbitration mediation (whether formal or informal). Mem. 13 & n.2. And courts also recognize

12

that party participation is critical to effective settlement discussions. *Id.* at 12-13.

13

Plaintiffs do not dispute any of this, but instead argue that the requirement that claimants

14

personally participate in the informal settlement conference not only makes this case different, but

15

goes so far as to violate rules of professional conduct. Opp. 21-23. That requirement of personal

16

participation is used in many companies' contracts, yet ***no court*** has ever held it unenforceable.

17

For good reason: plaintiffs misconstrue the law. Plaintiffs primarily invoke California's

18

Rule 4.2 (formerly Rule 2-100), but that rule "'must be interpreted narrowly.'" *Estate of Elkins v.*

19

*Palayo*, 2020 WL 977931, at *8 (E.D. Cal. Feb. 28, 2020) (quoting *San Francisco Unified Sch.*

20

*Dist. ex rel. Contreras v. First Student, Inc.*, 213 Cal.App.4th 1212, 1231 (2013)). In particular,

21

"[t]he overriding purpose of Rule 4.2 'is to prohibit one side to a dispute from obtaining an unfair

22

advantage over the other side as a result of having *ex-parte* access to a represented party.'" *Id.*

23

(quoting *Contreras*, 213 Cal.App.4th at 1235). There is no danger of *ex parte* communications

24

_____

25

date certain. And as explained below (at 12-13), plaintiffs' arguments that H&R Block has delayed the resolution of arbitrations are misleading.

26

[4]      *See* Mem. 12-14 (citing, *e.g.*, *Concepcion*, 563 U.S. at 336-37, 352; *Bielski v. Coinbase,*

27

*Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal.App.4th 695, 710 (2013); *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 732 (4th Cir. 2025)); *see*

28

*also*, *e.g.*, *Nguyen v. Applied Med. Resources Corp.*, 4 Cal.App.5th 232, 254 (2016) (following *Serpa* to uphold similar pre-arbitration dispute process).

1    under the informal settlement conference process, because if a claimant has counsel, counsel can

2    (and does) participate in the conference. Schuessler Decl. Ex. 4 § 11.2(B); *see also* Supp. Murdock

3    Decl. ¶ 15 (H&R Block's counsel does not communicate with represented parties without counsel

4    present); Gilman Decl. ¶ 34 (similar). "'If a party's counsel is present when an opposing attorney

5    communicates with a party, counsel can easily correct any element of error in the communication

6    or correct the effect of the communication by calling attention to counteracting elements which

7    may exist.'" *Elkins*, 2020 WL 977931, at *8 (quoting *Contreras*, 213 Cal.App.4th at 1230).[5]

8        Plaintiffs fare no better in arguing that the sole purpose of requiring personal participation

9    is delay. Opp. 22-23. That argument flies in the face of courts' repeated recognition that party

10   participation increases the likelihood of resolving disputes. Mem. 12-13. Indeed, the Korein Tillery

11   firm (which filed a declaration) has their clients *affirmatively* "request an informal settlement

12   conference as set forth in [§ 11 of the OSA]." *See* Supp. Murdock Decl. ¶ 13 & Ex. 2. That fact

13   rebuts plaintiffs' insistence that the conferences don't benefit potential claimants.

14       Plaintiffs also fail to confront the other real-world benefits of personal participation. In

15   addition to facilitating informal resolution, personal participation matters for reliability; it helps

16   ensure that the claimant is in fact represented by the lawyer and has authorized the claim. Here,

17   these concerns are far from hypothetical. Zimmerman Reed tries to downplay their failure to

18   recognize that both plaintiffs here submitted multiple notices of dispute through different law

19   firms—pretending that it was a one-off mistake (Opp. 7 n.4)—but it isn't an isolated problem. H&R

20   Block's review of its records shows that *23% of the claimants* in Zimmerman Reed's portfolio also

21   submitted other notices of dispute through different law firms. Supp. Murdock Decl. ¶ 11. Party

22   participation addresses this issue by requiring real-time communication with the parties, including

23   the opportunity to address the threshold question of which law firm really represents the claimant.

24

---

25   [5]    In addition, the only *mandatory* participants in the informal settlement conference are "You

26   [the customer] and our *business* representative." Schuessler Decl. Ex. 4 § 11.2(B) (emphasis
     added). Rule 4.2 "does not prevent represented persons from communicating directly with one
27   another with respect to the subject of the representation, nor does it prohibit a lawyer from advising
     a client concerning such a communication." Cal. Rule 4.2 cmt. 3; *see also HTC Corp. v. Tech.*
28   *Props. Ltd.*, 715 F. Supp. 2d 968, 973 (N.D. Cal. 2010) (explaining that, under the rule, party
     principals are permitted to directly communicate with each other).

Likewise, informal settlement conferences address the serious problem of unvetted claims prior to formal arbitration proceedings. Zimmerman Reed offers no serious defense of its widespread failure to vet claims. *See* Mem. 6, 14. It touts that 96% of the claimants are actually H&R Block customers (Opp. 22), but the fact that 4 out of every 100 claims are brought by non-customers is alarming; these claims are sanctionably frivolous on their face. Moreover, Zimmerman Reed ignores that, despite being H&R Block customers, many of its claimants never used H&R Block's *online* tax filing services—the very predicate for the claims being asserted—so the real proportion of patently frivolous claims is greater than 20%. Mem. 6. Furthermore, there is little to suggest Zimmerman Reed even reviewed the Notices before sending them to H&R Block: one Notice, for example, is submitted on behalf of "**John Doe**" with the address "**1519 Tester Way**" in "**Test, California**"; the telephone number **"(123) 123-1234"**; an email address of "**John.Doe@tester.com**"; and a signature line signed as "**No Agreement**." Supp. Murdock Decl. Ex. 1. A lawyer could not justify filing such a facially illegitimate claim in court given Rule 11, 28 U.S.C. § 1927, and the lawyer's professional obligations, *see* ABA Model Rule 3.1.

Rather than explain its failures, Zimmerman Reed tries to shift the responsibility to H&R Block to vet the firm's own putative clients, complaining that H&R Block has not shared its investigative results for all claimants en masse rather than addressing each individual claim separately as it arises. Opp. 23. But Rule 11's duty to investigate claims *before* filing cannot be foisted upon a plaintiff's adversary. Mem. 14 n.4 (citing cases); *see also*, *e.g.*, *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990) ("Blind reliance on the client is seldom a sufficient inquiry."); Schuessler Decl. Ex. 4 § 11.5 (incorporating Rule 11's standards). Plaintiffs also can't square their position with their (inaccurate) assertions that H&R Block is improperly aggregating individual arbitrations. Opp. 8-13. The approach plaintiffs urge the Court to endorse—that lawyers can assert claims first to secure leverage, then outsource vetting to the defendant—would only incentivize the abusive behavior that is already all too prevalent in the context of mass arbitrations. *See* Mem. 20.

### 2.    The bellwether procedures are enforceable.

Plaintiffs do not deny that the bellwether provision in the OSA is modeled on the approach used by MDL courts to resolve large numbers of individual lawsuits by informing merits-based

DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION;
CASE NO. 3:25-CV-03530-EMC

resolutions. Mem. 15, 18-19. Plaintiffs also ignore that two courts have recently upheld similar bellwether procedures under California law—failing to even mention those cases despite defendants' discussion of them. *See id.* at 15-16 (citing *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *17-18 (S.D.N.Y. July 8, 2024); *Ruiz v. CarMax Auto Superstores, Inc*., 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024)). Plaintiffs further ignore that Judge Reyes *sua sponte* called for bellwether arbitrations as a reasonable way to move thousands of individual arbitrations towards resolution. *See id.* at 15. And plaintiffs have no convincing answer to the real-world problems that bellwether procedures address—including the filing of large numbers of frivolous or unvetted arbitration demands for the purpose of inflating a defendant's arbitration fees. *Id.* at 20.

Plaintiffs instead attack the bellwether provision on several grounds, but all are meritless.

> a.    *H&R Block's arbitration agreement tolls the statute of limitations.*

The OSA expressly tolls the statute of limitations for claimants who submit compliant Notices of Dispute. During the Informal Resolution Period prior to an arbitration, "[a]ny applicable statute of limitations will be tolled for the claims and relief set forth in the Notice" starting when "either you or we send the other a fully complete Notice." Schuessler Decl. Ex. 4 § 11.2(B); *see also id.* Ex. 4 § 11.2(A) (setting forth the requirements for the Notice). And when the bellwether procedures apply, "the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved." *Id.* § 11.6. That's why the *Caimano* court remarked that "**no consumer is at risk of losing any claims as a result of this provision**." 2024 WL 3295589, at *12 (emphasis added; quotation marks and alterations omitted).

Plaintiffs' assertion that tolling is based on "defendants' unilateral determination of what constitutes a 'fully complete Notice'" (Opp. 3, 19) ignores how contract law works. The OSA governs what the Notice requires, and it is up to a court or arbitrator, not defendants, to decide whether a claimant has met those requirements and is entitled to tolling under the contract.

Relatedly, plaintiffs are off the mark in protesting (Opp. 7, 11) that H&R Block "reserved all rights" when accepting service of the Zimmerman Reed Notices. That standard language for preserving a party's position doesn't change the objective meaning of the contract terms or whether

1    claimants in fact complied with those terms. No surprise, then, that Zimmerman Reed used the

2    exact same language when it submitted its Notices, stating that "we do not concede that all pre-

3    filing provisions relating to the arbitration of claims are enforceable and Claimants reserve all rights

4    in that regard." Ellersick Decl. Ex. 7 at 4; *see also id.* Ex. 11, at 5 (similar).

5                    b.      *The bellwether provision does not result in unconscionable delay.*

6          Plaintiffs fail to substantiate their assertions of unconscionable delay as a result of the

7    bellwether provision with any nonspeculative proof. Indeed, they do not even attempt to

8    demonstrate delay compared to how long the same number of individual claims would take to

9    resolve without an orderly bellwether process—either in arbitration or in court.

10         For example, plaintiffs do not bother to confront the real-world constraints on the number

11   of arbitrators and their availability (Mem. 18 & n.7)—much less the number of arbitrations that any

12   plaintiffs' firm can realistically handle at one time. Plaintiffs' only response to these realities is to

13   complain about the American Arbitration Association (AAA), grousing that, in their view, it is

14   "unable to administer disputes without excessive delay." Opp. 20. But the AAA is one of the

15   nation's leading arbitration providers, and plaintiffs tellingly offer no concrete alternatives that they

16   say would be faster. So the argument isn't really about bellwethers at all; it's that *any* arbitration

17   clause should be invalidated for causing delay whenever there are many claims. That is not and

18   cannot be the law, as it would place the validity of any arbitration clause at the mercy of a law

19   firm's ability to collect a sufficiently large number of putative claimants.

20         Plaintiffs also have no persuasive response to the fact that mass tort claims in court are also

21   staged using bellwether proceedings. *See* Mem. 18-19. They attempt to draw the distinction that

22   non-bellwether mass tort plaintiffs can file their complaints and have them languish on the court's

23   docket, while non-bellwether arbitration claimants cannot file an arbitration demand with the AAA.

24   Opp. 10, 19. But the claims of consumers who comply with the OSA's procedures are tolled, so in

25   practice the provision changes only the timing of the arbitration fees. Yet the California Supreme

26   Court has just confirmed that "parties can override" by contract the "default" rules governing the

27   payment of arbitration fees, and courts are required to honor the parties' contractual choices.

28   *Hohenshelt v. Super. Ct.*, --- P.3d ----, 2025 WL 2302229, at *14, *17 (Cal. Aug. 11, 2025).

Plaintiffs' only response to the small claims court option in the OSA (*see* Mem. 18) is that lawyers cannot appear in small claims court in California. Opp. 20. But that's not true in many other jurisdictions, and only around 16% of the claimants that Zimmerman Reed purports to represent are Californians. Supp. Murdock Decl. ¶ 9. Indeed, the Korein Tillery firm (which filed a declaration) brought similar claims in Illinois small claims court on behalf of a client who chose to forego arbitration. *See* Decl. of Gregory Ostfeld ¶ 52. And *all* customers can sue in small claims court in Missouri if their claims fall within the jurisdictional limit (which most consumer claims do), because defendants are headquartered and thus subject to personal jurisdiction there.

Plaintiffs submit declarations in an attempt to show that defendants are responsible for what they perceive as delays in the arbitration process in certain cases or groups of arbitrations. It's hard to square those arguments with their position that the enforceability of contract terms should be evaluated at "the time of contract formation." Opp. 18. But even worse, their arguments, and the carefully-worded declarations from the other law firms, rest on a factual presentation that is at best incomplete, and at worst outright inaccurate or misleading.

For example, plaintiffs spend significant time arguing about the 11-week period between when Zimmerman Reed sent a letter with a link to an online portal for accessing thousands of Notices of Dispute and when H&R Block agreed to accept service of those Notices. Opp. 4-6. As they acknowledge (*id.* at 2), the OSA's plain language requires each claimant's Notice to be sent by "mail." Schuessler Decl. Ex. 4 § 11.2(A). Others have had no trouble satisfying that requirement (including the two firms that submitted declarations), but Zimmerman Reed intentionally breached the contract. Nonetheless, defendants agreed to accept service of the Notices. Gilman Decl. ¶ 14.

That said, it was not only contractually correct for H&R Block to expect compliance with the specified procedures, such as individual mailings rather than mass uploads, but also fully appropriate in light of the abuses of mass arbitration and the need for indicia that claimants are aware that lawyers are actually filing claims on their behalf. Indeed, H&R Block would be entitled to be concerned about Zimmerman Reed in particular, given repeated public allegations of improper conduct against Zimmerman Reed. *See* Mem. 14 n.5 (discussing *WarnerMedia Direct, LLC v. Zimmerman Reed LLP*, No. 652500/2024 (N.Y. Sup. Ct., N.Y. Cnty. filed May 15, 2024)); *see also*

1  *L'Occitane v. Zimmerman Reed, et al.*, No. 2:24-cv-01103 (C.D. Cal. filed April 15, 2024) (alleging

2  that Zimmerman Reed and its clients manufactured claims by visiting the defendant's website in

3  order to assert privacy violations from those visits). And defendants' investigation bears out those

4  concerns: H&R Block's review of its records show that 40% of the non-duplicate claimants cannot

5  truthfully assert the basic factual allegation made in the Notices (Mem. 5-6)—a fact plaintiffs do

6  not dispute in their brief; moreover, 23% of the claimants have submitted multiple notices of dispute

7  through *different* law firms, each one purporting to represent them (*see* page 8, *supra*).

8      Based on three examples—the *Caimano* case and bellwether arbitrations brought by two

9  other law firms—plaintiffs take issue with the statement in the OSA that "arbitrators are encouraged

10  to resolve arbitrations within 120 days of appointment or as swiftly as possible, consistent with

11  principles of fundamental fairness." Opp. 7-8 (quoting Schuessler Decl. Ex. 4 § 11.6). But their

12  arguments rest on an apples-to-oranges comparison, because plaintiffs rely on when the arbitrations

13  were filed rather than when each arbitrator was appointed.

14      More fundamentally, plaintiffs' insinuations of delay do not survive even minimal scrutiny:

15  (1) in *Caimano*, the arbitrators have not even been appointed due to the parties' voluntary

16  participation in the AAA's mediation program (Ostfeld Decl. ¶¶ 13-15); (2) in the 10 arbitrations

17  brought by Korein Tillery and their co-counsel (the law firms refused to file the other 10), H&R

18  Block proposed hearing dates within 120 days of the arbitrators' appointment, but *claimants'*

19  *counsel rejected that proposal* and so H&R Block worked cooperatively to accommodate opposing

20  counsel's schedule (*id.* at ¶¶ 11, 37-51); and (3) in the 20 arbitrations brought by Milberg, the

21  perfunctory declaration by Milberg's lawyer omits that the hearing dates and any continuances were

22  all scheduled by agreement of the parties and the arbitrators; that several of the hearings were

23  postponed while the parties engaged in confidential settlement discussions; and that all but two of

24  the arbitrations have been resolved by voluntary dismissal or by a final hearing (*id.* at ¶¶ 16-36).

25      In short, the evidence plaintiffs cite doesn't support their claims of unconscionable delay.

26          c.    *The bellwether procedures are appropriately limited to claims*
                  *brought by the same or coordinated counsel.*

27  Finally, plaintiffs argue that the bellwether provision interferes with claimants' choice of

28

counsel and lacks mutuality for that reason. Opp. 19-20. Plaintiffs ignore the points on mutuality made in our brief (Mem. 19), including that mass arbitrations—like class actions—are almost invariably brought by consumers against a company, yet the law is clear that arbitration agreements precluding class proceedings are enforceable. *Concepcion*, 563 U.S. 333. Plaintiffs likewise ignore that California law does not require point-by-point mutuality of all contract terms. *Sanchez*, 353 P.3d at 749. Accordingly, the bellwether provision is not unconscionable for lack of mutuality.

Nor is there anything problematic about restricting application of bellwether procedures to claims brought by "the same or coordinated counsel." Schuessler Decl. Ex. 4 § 11.6. That tracks the AAA's Mass Arbitration Supplementary Rules, which require that "representation of all parties is consistent or coordinated across the cases." Rule MA-1(b)(iii). And limiting the staged bellwether process to claims brought by the same or coordinated counsel is equivalent to MDL courts' appointment of lead or coordinating counsel "'to manage the litigation.'" *In re HIV Antitrust Litig.*, 2023 WL 7397567, at *3 (N.D. Cal. Nov. 8, 2023) (Chen, J.).

Indeed, in *Pandolfi*, this Court expressed concern about broader language in the bellwether provision that encompassed not only claims brought by the same or related counsel, but also claims that "'*are otherwise coordinated*.'" *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024), *appeal pending* (emphasis the Court's). If *including* claims brought by "independent counsel who represent other unrelated consumers" in a bellwether process gives the provision an unconscionable sweep (*id.* at *6), then it cannot also be unconscionable to instead *exclude* those claims and limit the process to claims brought by the same or coordinated counsel.

### 3. The challenged terms are severable.

Plaintiffs ignore California's "'strong preference'" for severance. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272 (9th Cir. 2017). They instead rely solely on *Heckman* and *Pandolfi*. Opp. 24. But each rejected severance because "multiple unconscionable provisions" "permeate[d] all aspects" of the clause and reflected a "'systematic effort'" to make arbitration "'an inferior forum.'" *Heckman*, 120 F.4th at 688-89; *see also Pandolfi*, 2024 WL 4051754, at *13; Mem. 21-22.

The OSA's arbitration provision does not contain these defects. The "chilling effect" plaintiffs hypothesize (Opp. 24) is entirely unsupported; on the contrary, plaintiffs themselves have

14

1    repeatedly asserted an intent to arbitrate under the terms of their arbitration agreements through

2    multiple law firms (Mem. 5-6), as have many others.

3        In addition, plaintiffs' assertion that severance will create "perverse incentives" (Opp. 24)

4    assumes that defendants should have known at the time of drafting that staged bellwethering would

5    be declared unlawful. But the law does not bear out that assumption. Indeed, other courts have

6    upheld similar bellwether clauses. *See Brooks*, 2024 WL 3330305, at *17-18; *Ruiz*, 2024 WL

7    1136332, at *6. And it matters whether "the state of the law was 'sufficiently clear at the time the

8    arbitration agreement was signed to lead to the conclusion that [the provision at issue] was drafted

9    in bad faith.'" *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1076 (2003) (severing provision).

10   **III.    Plaintiffs Cannot Evade Arbitration By Invoking *McGill*.**

11       Plaintiffs do not dispute that their injunctive relief is private under controlling Ninth Circuit

12   precedent. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021); Mem. 23.

13   Instead, they urge the Court to follow decisions from California intermediate appellate courts that

14   have disagreed with *Hodges*. Opp. 24-25 & n.9. But that invitation to disregard *Hodges* is improper.

15       Moreover, *Hodges* explains that an expanded version of the *McGill* rule is preempted by

16   the FAA. A broader rule "that *any* injunction against future illegal conduct constitutes non-waivable

17   public injunctive relief"—endorsed by some California courts—"disregards all of the limitations

18   on public injunctive relief" that led the Ninth Circuit to save *McGill* from preemption. *Hodges*, 21

19   F.4th at 548. California state courts cannot overrule that binding pronouncement of *federal* law.

20       Finally, any request for public injunctive relief should be severed and stayed. Mem. 24.

21   Plaintiffs argue that the contract must expressly postpone adjudication of a public-injunction

22   request until after the arbitration. Opp. 25. But no such language was present in other cases staying

23   public-injunction requests either. *See, e.g.*, *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770,

24   777 (N.D. Cal. 2021); *Dornaus v. Best Buy Co.*, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019).

25                                   **CONCLUSION**

26       The Court should compel plaintiffs to arbitrate their claims in accordance with their

27   arbitration agreements and stay further litigation pending the outcome of arbitration.

28

15

Dated: August 15, 2025

Respectfully submitted,

By: /s/ Archis A. Parasharami

Archis A. Parasharami
aparasharami@mayerbrown.com
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 874-4230

*Attorneys for Defendants HRB Digital,
LLC and HRB Tax Group, Inc.*