MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 874-4230

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DECLARATION OF GREGORY E. OSTFELD IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date: August 28, 2025<br>Time: 1:30 P.M.<br>Location: Courtroom 5, 17th Floor |

I, Gregory E. Ostfeld, declare as follows:

1. I am an attorney licensed to practice law in the State of Illinois.

2. I am a shareholder in the law firm of Greenberg Traurig, LLP ("Greenberg").

3. Greenberg represents HRB Digital, LLC and HRB Tax Group, Inc. (collectively, "H&R Block") in arbitrations commenced by claimants represented by: Zimmerman Reed LLP (the "Zimmerman Arbitrations"); Milberg Coleman Bryson Phillips Grossman, LLC (the "Milberg

Arbitrations"); and Korein Tillery, LLC and Zigler Law Group (the "Korein/Zigler Arbitrations"). I am one of the lead attorneys for H&R Block in these arbitrations.

4. I have reviewed: the Declaration of Ryan Ellersick [Dkt. 26] ("Ellersick Declaration" or "Ellersick Decl.") regarding the Zimmerman Arbitrations; the Declaration of Scott J. Falgoust [Dkt. 29] ("Falgoust Declaration" or "Falgoust Decl.") regarding the Milberg Arbitrations; and the Declaration of Stephen M. Tillery [Dkt. 30] ("Tillery Declaration" or "Tillery Decl.") regarding the Korein/Zigler Arbitrations.

5. The Ellersick Declaration, Falgoust Declaration, and Tillery Declaration are incomplete and, in some instances inaccurate. I will address each Declaration and each set of arbitration proceedings in turn.

**The Zimmerman Arbitrations and the Ellersick Declaration**

6. Much of the Ellersick Declaration pertains to events occurring prior to the commencement of the Zimmerman Arbitrations, and will be addressed separately in the declaration of Stacey Gilman. I will address the portions of the Ellersick Declaration pertaining to the commencement of the Zimmerman Arbitrations (Ellersick Decl. ¶¶ 27-28) and to the arbitration proceedings Mr. Ellersick references in his declaration, but in which Zimmerman Reed ("Zimmerman") and Mr. Ellersick are not involved (*id*. ¶¶ 38-41).

7. Mr. Ellersick states that, "To date, AAA has not appointed merits arbitrators to adjudicate the claims" filed by Zimmerman in April 2025. (*Id*. ¶ 27).

8. The Ellersick Declaration omits that the parties participated in an Administrative Conference Call with the AAA on July 24, 2025, during which the parties agreed on the arbitrator selection process and the AAA case administrator confirmed the AAA would begin issuing arbitrator lists as provided by the OSA's arbitrator list selection process.

9. Mr. Ellersick further states: "Evidence from other law firms litigating privacy disputes against H&R Block demonstrates that arbitrations are taking much longer than 120 days. For example, Korein Tillery filed 10 arbitration demands in October 2024, but not a single case has advanced to an arbitration hearing. [citing Tillery Decl. ¶¶ 3-4] Similarly, Milberg is still in the

process of litigating the initial batch of 20 arbitration demands filed in February 2024. [citing Falgoust Decl. ¶¶ 3-4].” (Ellersick Decl. ¶ 38).

10. For the reasons set out in paragraphs 116-36 and 37-52 of this declaration, I disagree with Mr. Ellersick’s characterization of the Falgoust Declaration and Tillery Declaration as “evidence” that arbitrations under the OSA take longer than the period of time encouraged by Section 11.6 of the OSA.

11. Rather, the progression of the Milberg Arbitrations and the Korein/Zigler Arbitrations reflects the parties’ and the arbitrators’ efforts to address claimants’ strategic views of their cases, the fact and expert discovery sought by claimants, the parties’ good-faith efforts to engage in settlement discussions, and cooperation amongst the parties and arbitrators to reasonably accommodate the schedules of counsel, the witnesses, and the arbitrators. And, in the case of the Korein/Zigler Arbitrations, the Ellersick Declaration omits the fact that H&R Block expressly proposed to conduct hearings within 120 days of the appointment of each arbitrator, but claimants’ counsel disagreed with that schedule and further sought to schedule hearings no earlier than late November 2025 due to the unavailability of claimants’ lead trial counsel.

12. Mr. Ellersick also references the case of *Caimano v. H&R Block*, 23-cv-03272-JHS, which was compelled to arbitration, and states that the plaintiffs compelled to arbitration in that case “had not completed their individual arbitrations as of June 10, 2025, despite filing their demands on August 1, 2024.” (Ellersick Decl. ¶¶ 39-41). That is incomplete and inaccurate.

13. Greenberg represents H&R Block in the arbitrations filed by the plaintiffs in the *Caimano* case. I am one of the lead attorneys for H&R Block in these arbitrations. Claimants’ counsel in those cases filed arbitration demands on August 1, 2024, but then inquired as to H&R Block’s willingness to engage in mediation prior to proceeding with arbitration.

14. By agreement of the parties, both plaintiffs’ arbitrations were placed in abeyance by the AAA and the parties proceeded to participate in the AAA’s mediation pilot program. Initial mediations were held in each case and settlement discussions are continuing.

15. As a result, both cases have been in abeyance since November 2024, arbitrators have not been appointed in either case, and the arbitrations have not proceeded.

**The Milberg Arbitrations and the Falgoust Declaration**

16. Mr. Falgoust declares that in February 2024, "my firm filed Consumer Demands for Arbitration with the American Arbitration Association ('AAA') on behalf of 20 of our clients," and that "[a]s of the date of this declaration, my firm is still litigating that first stage of 20 claims filed with the AAA over 18 months ago, with an anticipated completion date of the first stage being no earlier than October 1, 2025." (Falgoust Decl. ¶¶ 3-4). These statements are inaccurate, misleading, or incomplete.

17. Milberg Coleman Bryson Phillips Grossman, LLC ("Milberg") filed 10 claims with the AAA in February 2024 (the "First 10 Milberg Arbitrations"), not 20 claims as stated by Mr. Falgoust.

18. Mr. Falgoust omits that H&R Block participated in a mediation with Milberg regarding the Milberg Arbitrations on December 11, 2023. Milberg waited approximately two months after that mediation was unsuccessful before filing the First 10 Milberg Arbitrations.

19. Section 11.6 of the Online Services Agreement ("OSA") between each claimant and H&R Block states that, in a case like this where counsel represents 25 or more claimants seeking to file arbitrations with similar claims, the cases must be resolved in stages. In the first stage, each side selects 10 cases to be filed and resolved before additional cases are filed. Section 11.6 provides:

> 11.6 **Arbitration of similar claims**. If 25 or more claimants submit Notices or seek to file arbitrations raising similar claims and are represented by the same or coordinated counsel (regardless of whether the cases are submitted simultaneously), all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved during the Informal Resolution Period. You agree to this process even though it may delay the arbitration of your claim. ***In the first stage, each side shall select 10 cases (20 cases total) to be filed in arbitration*** and resolved individually by different arbitrators, with each case assigned to an arbitrator from the claimant's home state. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, assess or demand fees for, or administer arbitrations that are commenced in violation of this section. The arbitrators are encouraged to resolve the cases within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness. If the remaining cases are unable to be resolved after the conclusion of the first stage bellwether proceeding, each side shall select up to another 10 cases (20 cases total) to be filed in arbitration and resolved individually in accordance with this Arbitration Agreement. During this second stage, no other cases may be filed in arbitration. If any claims remain after the second stage, the process will be repeated until all claims are resolved through settlement or arbitration, with two alterations. First, a total of 50 cases may be filed each round (unless a higher number of cases is mutually agreed upon in writing). Second, arbitrators who were assigned cases in

> previous rounds may be appointed to new cases. If this section 11.6 applies to a Notice, the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have authority to enforce this section 11.6, including to enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations.

OSA § 11.6 (emphasis added).

20. Promptly after receiving notice of claimants' demands in the First 10 Milberg Arbitrations, and in accordance with section 11.6 of the OSA, H&R Block notified Milberg by email correspondence of H&R Block's 10 selected claimants to proceed to arbitration from the pool of claimants represented by Milberg in which informal settlement conferences had already taken place.

21. Milberg responded by email on March 5, 2024, refusing to commence arbitration proceedings on behalf of the 10 claimants selected by H&R Block.

22. The AAA opened the First 10 Milberg Arbitrations beginning in February 2024, administered the arbitrator selection process in accordance with the terms of the OSA, and commenced each individual arbitration proceeding upon the selection of each arbitrator.

23. Milberg subsequently purported to file 25 additional claims with the AAA in June 2024 under the AAA's Mass Arbitration Supplementary Rules.

24. H&R Block timely objected to Milberg's purported commencement of 25 additional claims as inconsistent with Section 11.6 of the OSA, which provided for H&R Block to select the next 10 claimants to proceed to arbitration.

25. Nonetheless, H&R Block offered as a compromise to select its 10 claimants under Section 11.6 of the OSA from Milberg's 25 additional claimants, and for Milberg to withdraw the remaining 15 claimants' claims.

26. Claimants accepted H&R Block's compromise proposal and confirmed their agreement to the AAA in July 2024, resulting in AAA filing the next 10 claims in July 2024 (the "Second 10 Milberg Arbitrations").

27. The AAA opened the Second 10 Milberg Arbitrations beginning in August 2024, administered the arbitrator selection process in accordance with the terms of the OSA, and commenced each individual arbitration proceeding upon the selection of each arbitrator.

28. Counsel for Claimants and H&R Block have worked together and with the appointed arbitrators, cooperatively and professionally, to set hearings in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations with the goal of resolving the cases "within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness." OSA § 11.6.

29. The final hearing dates in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have been scheduled by agreement of the parties and the arbitrators, and each continuance of a hearing date has been by agreement of the parties and the arbitrators. I cannot recall any instance where the parties and arbitrators were unable to reach agreement on a final hearing date or continuance during the course of either the First 10 Milberg Arbitrations or the Second 10 Milberg Arbitrations.

30. Although the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have not been heard within 120 days of the appointment of arbitrators, they all have been heard "as swiftly as possible, consistent with principles of fundamental fairness," in light of the individual histories and proceedings in each case. These histories and proceedings are omitted from the Falgoust Declaration.

31. For example, the Falgoust Declaration omits that claimants in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have made strategic choices with respect to their claims, fact discovery, and expert discovery that go beyond the ordinary process contemplated by the AAA's Consumer Arbitration Rules, and have argued that fundamental fairness required these departures from the ordinary course of a consumer arbitration proceeding. As a result of these strategic choices, claimants in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have sought, and in many instances received, extended discovery, re-opened discovery, prehearing motion practice, and the setting or extension of preliminary and final hearings more than 120 days after appointment of the arbitrator in each case.

32. Among these strategic choices, claimants in some or all of the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have: filed amended demands adding and/or amending allegations and claims; pursued written discovery and/or the production of document, data, and information outside of the ordinary exchange process contemplated by the AAA's Consumer Arbitration Rules; pursued expert discovery that necessitated preparation and disclosure of expert reports and rebuttal expert reports; sought additional discovery of electronically stored information; sought the issuance of third-party discovery subpoenas; sought the deposition of a corporate representative witness for H&R Block; sought the issuance of third-party hearing witness subpoenas; designated testifying expert witnesses that necessitated the designation of rebuttal expert witnesses; and sought to re-open discovery and third-party subpoenas in certain matters outside of the deadlines set by the arbitrator for the conclusion of all discovery.

33. The Falgoust Declaration further omits that the First 10 Milberg Arbitrations were originally set for hearings starting in October 2024 and concluding by February 2025, but the parties mutually agreed to continue hearing dates based on the ongoing progression of the prehearing discovery and prehearing motion practice described above.

34. The Falgoust Declaration also omits that, on multiple occasions, the parties mutually agreed to continue hearing dates in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations to accommodate the unanticipated unavailability of an arbitrator, counsel, or witness.

35. The Falgoust Declaration additionally omits that, in February 2025, the parties mutually agreed to continue pending hearings to participate in voluntary mediation. This mutual agreement to pause scheduled arbitration hearings and to pursue settlement negotiations through mediation necessitated the rescheduling of several of the hearings.

36. Through the date of this declaration, hearings or voluntary dismissals have concluded all but two of the First 10 Milberg Arbitrations and Second 10 Milberg Arbitrations. One of the two remaining matters has already been heard, and the other is scheduled for hearing on August 26-27, 2025. These two hearings were postponed due to witness availability issues in the first case and motion practice related to a request by claimant to re-open discovery in the second case.

**The Korein/Zigler Arbitrations and the Tillery Declaration**

37. Mr. Tillery declares that in October 2024, "my firm filed Consumer Demands for Arbitration with the American Arbitration Association ('AAA') on behalf of 10 of our clients," and that "[a]s of the date of this declaration, with the exception of one claim that was voluntarily dismissed, all of these claims remain pending before the AAA, with four arbitration hearings scheduled for mid-to-late November 2025 to mid-January 2026 and the others anticipated to be scheduled for February 2026 or later." (Tillery Decl. ¶¶ 3-4).

38. Mr. Tillery omits relevant information from the Tillery Declaration, including that claimants' counsel is primarily responsible for the timing of the hearing schedule described by Mr. Tillery. As detailed further below, H&R Block specifically proposed to hold hearings in all of the arbitrations referenced in the Tillery Declaration within 120 days of appointment of the arbitrator in each case, but claimants' counsel rejected H&R Block's proposal. In doing so, claimants' counsel expressly took the position that the hearings could not be held within that time frame, insisted hearings not be set until late 2025 or early 2026, and then advised the arbitrators in each case that claimants' lead trial counsel was not available for final hearings during the entire month of October and the first half of November.

39. Korein Tillery, LLC ("Korein") and Zigler Law Group ("Zigler") filed their 10 claims with the AAA in October 2024 (the "First 10 Korein/Zigler Arbitrations").

40. The Tillery Declaration omits that, promptly after receiving notice of the First 10 Korein/Zigler Arbitrations, and in accordance with section 11.6 of the OSA, H&R Block notified Korein and Zigler by email correspondence in December 2024 of H&R Block's 10 selected claimants to proceed to arbitration from the pool of claimants represented by Korein and Zigler in which Informal Settlement Conferences had already taken place. Korein and Zigler did not file demands or commence arbitration proceedings on behalf of H&R Block's 10 selected claimants.

41. In February 2025, H&R Block again sent its list of 10 selections to Korein and Zigler. Korein and Zigler again did not file demands or commence arbitration proceedings on behalf of H&R Block's 10 selected claimants.

42. The AAA opened the First 10 Korein/Zigler Arbitrations beginning in December 2024 and January 2025. The Tillery Declaration omits that there were multiple rounds of correspondence by claimants' counsel and H&R Block's counsel to the AAA in January and February 2025 pertaining to procedural issues, including the format of hearings and the arbitrator list selection process.

43. The AAA began administering the arbitrator selection process in accordance with the terms of the OSA in March 2025, and commenced each individual arbitration proceeding upon the selection of each arbitrator. Nine of the ten arbitrators were selected by April 2025.

44. The Tillery Declaration omits that in February 2025, counsel for H&R Block provided a detailed proposal to claimants' counsel regarding the exchange of documents and information in two of the First 10 Korein/Zigler Arbitrations, and proposed to conduct similar discussions in the other cases. Claimants' counsel waited nearly a month before responding to this proposal, and in response proposed extensive written discovery outside of the ordinary document and information exchange process contemplated by the AAA's Consumer Arbitration Rules.

45. The appointed arbitrators began scheduling preliminary management hearings beginning in April 2025, while counsel for claimants and H&R Block were meeting and conferring regarding information and document exchanges. The Tillery Declaration omits that the parties jointly informed the arbitrators of their mutual agreement to postpone the preliminary management hearings by 30 days to allow the parties to continue conferring, by email correspondence in April 2025.

46. The Tillery Declaration omits that, when preliminary management hearings began in May 2025, at claimants' request, entry of preliminary scheduling orders was postponed in most of the First 10 Korein/Zigler Arbitrations because claimants sought to brief which version of the AAA's Consumer Arbitration Rules applied to each proceeding.

47. Importantly, the Tillery Declaration omits that, in each of the First 10 Korein/Zigler Arbitrations, H&R Block offered to schedule a final hearing during the summer or early fall of 2025, which would have been within 120 days of appointment of the arbitrator in each case.

Claimants' counsel opposed H&R Block's proposal, insisting that the hearings could not be held within that time frame and should not be set until late fall or winter.

48. In the parties' meet-and-confer sessions and in prehearing conferences held in several of the First 10 Korein/Zigler Arbitrations, claimants' counsel have offered multiple reasons why hearings cannot commence within H&R Block's proposed early timeframe, most of which involve strategic choices by claimants' counsel. Among these, claimants' counsel have sought extensive written discovery and/or the production of document, data, and information outside of the ordinary exchange process contemplated by the AAA's Consumer Arbitration Rules; have indicated they intend to pursue expert discovery with disclosure of expert reports and rebuttal expert reports; have sought discovery of electronically stored information; and have indicated they intend to request issuance of subpoenas upon third parties and to bifurcate hearings into two parts and two locations to facilitate testimony from third-party witnesses. These issues have been and continue to be the subject of discussions between the parties and/or prehearing motion practice.

49. Moreover, when the parties began setting hearing dates with the arbitrators in the First 10 Korein/Zigler Arbitrations, claimants' counsel advised the arbitrators that claimants' lead trial counsel is not available for final hearings during the entire month of October and the first half of November.

50. H&R Block has accommodated the schedule of claimants' lead trial counsel and has offered hearing dates commencing in October and December 2025, and, at the request of one arbitrator, in January 2026. There has not yet been any discussion of hearing dates in "February 2026 or later," and I do not know the basis for that statement in the Tillery Declaration. (*See* Tillery Decl. ¶ 4).

51. H&R Block intends to continue to work with claimants' counsel and with the appointed arbitrators, cooperatively and professionally, to set hearings in the First 10 Korein/Zigler Arbitrations. It will also work with claimants' counsel, the AAA, and the appointed arbitrators for any additional arbitrations commenced by Korein and Zigler in accordance with the terms of the OSA. In all instances, H&R Block has worked and will work with the goal of resolving the cases "within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental

fairness." OSA § 11.6. To be clear, however, the timing of the hearings in the First 10 Korein/Zigler Arbitrations has been based on the circumstances described above and not any undue delay on the part of H&R Block, which proposed and was prepared to schedule earlier hearing dates.

52. Notably, the Tillery Declaration also omits that Korein and Zigler represent one plaintiff, Justin Sexton, who has chosen to bring claims in small claims court in St. Clair County, Illinois, asserting claims arising out of similar factual allegations underlying claimants' claims in the Korein/Zigler Arbitrations. Section 11.1 of the OSA permits a customer of H&R Block to elect to file an individual claim to be decided in small claims court as an alternative to arbitration.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2025.

Gregory E. Ostfeld