MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 874-4230

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,

Plaintiffs,

v.

HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,

Defendants.

**Case No. 3:25-cv-03530-EMC**

Assigned to the Hon. Edward M. Chen

**DECLARATION OF STACEY GILMAN IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Date: August 28, 2025
Time: 1:30 P.M.
Location: Courtroom 5, 17th Floor

I, Stacey R. Gilman, declare as follows:

1. I am a partner at Berkowitz Oliver LLP ("Berkowitz Oliver") and am an active member in good standing of the California bar, licensed to practice before this court.

2. Berkowitz Oliver represents HRB Digital, LLC and HRB Tax Group, Inc. (collectively "H&R Block") in connection with claims asserted by claimants represented by Zimmerman Reed LLP ("Zimmerman Reed"). I am one of the lead attorneys for my firm involved in representing H&R Block with respect to these claims.

3. Berkowitz Oliver also represents H&R Block in Informal Settlement Conferences under the H&R Block Online Services Agreement in connection with claims raising similar issues asserted by

claimants represented by other law firms, including Milberg Coleman Bryson Phillips Grossman, LLC ("Milberg") and Korein Tillery, LLC and Zigler Law Group ("Korein/Zigler"). I am one of the lead attorneys for my firm involved in representing H&R Block with respect to these claims, and I have personally conducted many of those Informal Settlement Conferences.

4. I have reviewed the Declaration of Ryan Ellersick [Dkt. 26] ("Ellersick Declaration" or "Ellersick Decl.") filed in the above-captioned case. The Ellersick Declaration is incomplete and, in some instances, misleading or inaccurate. I have addressed some of the notable issues below.

**A. The Ellersick Declaration Asserts a False Narrative that "Plaintiffs Provided Pre-Filing Notices of Dispute to H&R Block, but H&R Block refused to Accept the Notices for Several Months." Ellersick Decl. § B.**

**1. Zimmerman Reed's "Pre-Filing Letters" were not Valid Notices of Dispute**

5. The Ellersick Declaration correctly states, "On September 20, 2024, Zimmerman Reed sent H&R Block a Pre-Filing Notice of Dispute Letter ('Pre-Filing Letter') via first class certified mail to H&R Block's Legal Department at the address designated in H&R Block's Online Services Agreement ('OSA')." Ellersick Decl. ¶ 16. The suggestion that this Letter was sent in a manner designated by and in compliance with the OSA, however, is incorrect and misleading.

6. To the contrary, Section 11.2 of the OSA (*see*, *e.g.*, Ex. 4 to the Declaration of Valerie Schuessler) expressly requires, among other things, that "a party who intends to seek arbitration must first mail a written Notice of Dispute to the other party. . . . [which] must be on an individual basis and include" individualized information about the claimant and their claim.

7. Zimmerman's "Pre-Filing Letter" was not sent on an individual basis and purported to describe and assert claims in aggregate on behalf of 2,481 claimants.[1]

8. Although the letter said that the claimants were "identified in Exhibit A" to that letter, the Exhibit A enclosed with the letter was not a set of mailed, individualized written notices with the individualized information required. In fact, Exhibit A did not contain any substantive (let alone individualized) identification of the claimants or their claims. Instead, it consisted solely of two lines of

[1] Although the first letter stated that Zimmerman Reed had 2,481 claimants, the actual number of claimants later identified were 2,478 claimants.

text, directing the recipient to "click the following ShareFile Link," which was a typed out url on the hardcopy letter.

9. Zimmerman sent a "second Pre-Filing Notice of Dispute Letter . . . on behalf of an additional 166 claimants," as referenced in paragraph 14 of the Ellersick Declaration. This second letter similarly was not sent on an individual basis and purported to assert aggregate claims in the same, deficient manner as the first letter.

**2. H&R Block Promptly Explained the Deficiencies in Zimmerman Reed's Letters, While Simultaneously Attempting to Move the Claims Forward Through the Parties' Agreed Informal Settlement Conference Process**

10. In response to the letters, H&R Block did not act to delay matters, as the Ellersick Declaration suggests. The letters between H&R Block and Zimmerman Reed dated between October 17, 2024 and December 6, 2024, are attached as Exhibits 8-13 to the Ellersick Declaration and speak for themselves.

11. In particular, the Ellersick Declaration claims there was never a timely request for Informal Settlement Conferences (Ellersick Decl. ¶ 26), but the correspondence refutes that contention. Both of Zimmerman Reed's Pre-filing Letters expressly acknowledged that Zimmerman Reed's claimants anticipated engaging in the Informal Settlement Conference process, requesting that H&R Block provide enumerated categories of documents and ESI "in anticipation of the Informal Settlement Conference." *See* Ellersick Decl. Exs. 3, 7. Zimmerman Reed also provided consent forms that purported to authorize H&R Block to share the claimants' tax information with Zimmerman Reed so that Zimmerman Reed could participate in the Informal Settlement Conferences. *See* Ellersick Decl. Ex. 5.

12. From the outset, H&R Block also anticipated that Informal Settlement Conferences would take place. *See* Ellersick Decl. Exs. 8, 10. But H&R Block repeatedly informed Zimmerman Reed that the consent forms Zimmerman Reed had provided did not satisfy the federally-imposed IRS requirements for such an authorization. *See* Ellersick Decl. Exs. 10, 12; *see also* 26 U.S.C. § 7216, 26 C.F.R. §§ 301-7216-1, and Internal Revenue Procedure 2013-2014, section 5.04 (cited in Ellersick Decl. Ex. 12).

13. To assist counsel, H&R Block enclosed with multiple letters a tax return information consent and authorization form that complies with the federally-imposed law. *See* Ellersick Decl. Exs. 8,

10. H&R Block also offered that it could accept electronic signatures on the consents, if claimants preferred to sign them that way. *See id.* Ex. 10.

14. Zimmerman Reed refused to move off of any of their prior positions concerning the Notices and consent forms and accused H&R Block of acting "in bad faith" by asking Zimmerman Reed to provide consent forms that met the requirements of federal law. While H&R Block disagreed with Zimmerman Reed's positions, in order to move things forward, H&R Block agreed to accept service of the Notices of Dispute for all of the 2,644 claimants despite their non-compliance. *See* Ellersick Ex. 12.

15. In its correspondence, H&R Block told Zimmerman Reed that it would send responses to each claimant, including requests to schedule each claimant's Informal Settlement Conference. *See* Ellersick Ex. 12. H&R Block also noted that it had no objection to counsel's participation in the Conferences, and that it was not proposing to speak to any represented party without their counsel present. *Id.* H&R Block's correspondence also went on to once again explain that the form of authorization needed from each claimant was a product of 26 U.S.C. § 7216, 26 C.F.R. §§ 301-7216-1, and Internal Revenue Procedure 2013-2014, section 5.04—and not a matter of H&R Block preference. *Id.*

16. Thereafter, H&R Block sent individual responses to each claimant, which confirmed H&R Block's request for an Informal Settlement Conference with them. Those responses set out an easy process for each claimant to engage in the Informal Settlement Conference process, including offering to hold their conference by telephone or videoconference and inviting the claimants to provide dates and times that would work for them so that the conferences could be scheduled at their convenience.

17. Rather than responding and moving forward with the settlement conferences, however, Zimmerman Reed sent a letter to H&R Block informing it, contrary to all of its prior correspondence, that it had bypassed the step of the Informal Settlement Conferences altogether and instead submitted individual arbitration demands to the American Arbitration Association ("AAA") pursuant to the AAA's Mass Arbitration Supplementary Rules.

**B. Despite Zimmerman Reed's Decision Not to Comply with the OSA's Notice and Pre-Arbitration Dispute Resolution Process, H&R Block Continued to Act in Good Faith**

**1. H&R Block Put Zimmerman Reed on Notice of Issues with the Claimants for Whom it is Pursuing Claims, and Encouraged the Firm to Cooperate in the Parties' Efficient, Agreed-Upon Individualized Resolution Process**

18. Even after they had disregarded the OSA's requirements, my firm reached out to Zimmerman Reed on H&R Block's behalf and convened a call with them on December 19, 2024. During the call, Berkowitz Oliver explained the benefits and reasons for the OSA's dispute resolution process, the ease of that process and its speed (which claimants and their counsel generally control), and H&R Block's willingness to schedule and proceed with the conferences as quickly as claimants and their counsel could make themselves available to participate. As H&R Block's counsel, Berkowitz Oliver also addressed the attendant need for proper authorizations from the claimants to allow those discussions to be meaningful.

19. For example, Berkowitz Oliver shared that the pool of claimants Zimmerman Reed was representing (including some for whom they had already filed arbitration demands) included people who had not used H&R Block's online tax preparation service, and for that reason alone—and others—they could not truthfully assert the claims they were pursuing. Berkowitz Oliver also explained that the Informal Settlement Conference would be the appropriate forum for discussing such issues, and that the claimant's authorization is, thus, necessary to allow the discussion to occur with their counsel's participation.

20. Having shared that additional background, Berkowitz Oliver again asked that Zimmerman Reed agree to follow the process, but they declined.

21. On December 27, 2024, Zimmerman Reed sent a letter to my firm saying that they were going to proceed with the 25 arbitrations they had filed, even though by that point Zimmerman Reed was on notice that not all of their claimants could viably state the claims they were pursuing. Also, despite the prior position taken by Zimmerman Reed that the claimants would participate in the Informal Settlement Conference process, they continued to refuse H&R Block's requests to hold such conferences, instead proposing to conduct a global mediation of all of their claimants' claims.

22. My firm responded to that letter on January 7, 2025. The January 7 letter reiterated, as had been shared by phone, that multiple of the claimants who had filed arbitrations could not truthfully state the claims they were asserting—in fact, the letter explained that 10 of the 25 claimants did not even use H&R Block's website to prepare their taxes in 2021 or 2022 as alleged in their arbitration demands. H&R Block's counsel also explained that such issues permeated the group of claimants Zimmerman Reed purported to represent, and expressed concerns that Zimmerman Reed had not conducted a reasonable investigation of its purported clients' claims.

23. The Ellersick Declaration omits to disclose its discussions and correspondence with my firm, which—together with H&R Block's earlier direct efforts to obtain valid consents and convene Informal Settlement Conferences—provides important context for the Ellersick Declaration's current complaints that H&R Block should have disclosed information to Zimmerman Reed sooner about the claimants it represents. *See, e.g.,* Ellersick Decl. §§ A and E.

24. As this record shows, Zimmerman Reed was expressly (and repeatedly) told that its claimant pool was deficient and also reminded that it had the duty to investigate the claims it was asserting. The record also shows that Zimmerman Reed prevented H&R Block from sharing individualized information, because counsel refused to provide the federally-required authorizations necessary to share such information and refused to participate in the Informal Settlement Conference process where such information could have been shared.

**2. Despite All of H&R Block's Efforts, Zimmerman Reed Persisted on Its Course.**

25. On January 7, the same day my firm emailed its letter, Zimmerman Reed filed five additional AAA arbitration demands. By ten days later, Zimmerman Reed still had not withdrawn any of the claims, had not placed them in abeyance, and showed no signs that it was investigating the serious issues H&R Block had raised concerning the claims its purported clients were asserting.

26. On January 17, 2025, my partner, Tony Durone, and I spoke with Ryan Ellersick and Hart Robinovitch of Zimmerman Reed. In response to their earlier mediation proposal (and given the continued refusal to participate in Informal Settlement Conferences), we told them that H&R Block would be open to using a mediator to facilitate settlement discussions. We invited them to propose a mediator, and again asked that they withdraw the 30 pending arbitrations filed in violation of the parties' agreement.

27. On January 28, 2025, the parties scheduled a mediation for March 11, 2025, through JAMS. The mediator, date, and format for the mediation all were selected by mutual agreement.

28. The parties conducted their mediation on March 11, 2025, as scheduled. The parties were unsuccessful in resolving their claims.

29. In the following days, the parties continued to discuss their respective positions, with Zimmerman Reed still refusing to participate in the Informal Settlement Conference process. Zimmerman Reed also sought to place the burden on H&R Block to identify which of Zimmerman Reed's claimants could not truthfully assert their claims, requesting (still without providing legally-compliant requests) that H&R Block give them confidential and sensitive information about their purported clients.

30. On April 17, 2025, Zimmerman Reed emailed Berkowitz Oliver notifying the firm of its intent to pursue arbitration claims and file a class action.

31. On April 22, 2025, Zimmerman Reed filed this case in the Northern District of California.

32. On or around May 12, 2025, Zimmerman Reed, which had dismissed its original 30 arbitration demands while the parties mediated, refiled 25 of those 30 prior arbitration demands.

**C. Informal Settlement Conferences In Connection With Similar Claims Asserted By Claimants Represented By Other Law Firms.**

33. As noted in paragraph 3 above, Berkowitz Oliver represents H&R Block in Informal Settlement Conferences under the H&R Block Online Services Agreement in connection with claims raising similar issues asserted on behalf of claimants represented by other law firms, including the Milberg and Korein/Zigler law firms, and I have personally conducted many of these conferences.

34. H&R Block always schedules these Informal Settlement Conferences through claimants' counsel and at times that claimants' counsel has indicated will work for both them and their clients. In every single one of these conducted Informal Settlement Conferences, counsel for both H&R Block and the claimant have been present.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 15, 2025

Stacey R. Gilman